IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGO LUA, P-48040, | ) No. C 12-1793-CRB (PR) |
| Plaintiff(s), | ) ORDER GRANTING |
| vs. | ) DEFENDANT'S MOTION FOR ) SUMMARY JUDGMENT |
| NANCY ADAM, M.D., | ) (Docket #29 & 35) |
| Defendant(s). | ) |

      Plaintiff Hugo Lua, a prisoner at Pelican Bay State Prison (PBSP) in Crescent City, California, filed a pro se complaint for damages under 42 U.S.C. § 1983 alleging that he received improper medical care for severe nerve pain. Plaintiff specifically alleges that PBSP Dr. Nancy Adam improperly discontinued his long-term pain medication despite his protests and medical history of severe nerve pain resulting from multiple herniated spinal discs.

      Per order filed on July 13, 2012, the Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and found that Plaintiff's allegations, when liberally construed, stated a cognizable Eighth Amendment claim under § 1983 for deliberate indifference to serious medical needs against Dr. Adam and ordered her served. July 13, 2012 Order (dkt. #8) at 2.

Defendant Dr. Adam now moves for summary judgment under Federal Rule of Civil Procedure 56 on the ground that there are no material facts in dispute and that she is entitled to judgment as a matter of law. Mot. for Summ. J. (dkt. #29) at 1. Defendant specifically argues that, even when viewed in the light most favorable to Plaintiff, the evidence in the record does not demonstrate that she was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. Id. at 1-2. Plaintiff has filed an opposition and Defendant has filed a reply.

Plaintiff also recently filed a motion asking the Court to issue a temporary restraining order (TRO) and/or preliminary injunction ordering Defendant and the PBSP Chronic Pain Management Committee to reissue Plaintiff's methadone medication for his lower back pain. Mot. for TRO (dkt. #35) at 1.

**UNDISPUTED FACTS**

As of September 27, 2011, Plaintiff was housed at California State Prison, Los Angeles County (LAC), and was taking methadone and ibuprofen for chronic lower back pain arising out of previous injuries. Adam Decl. (dkt. #29-1) at 2. Due to his pain, Plaintiff received certain accommodations at LAC: (1) he was housed in a ground floor cell in a bottom bunk; (2) he was allowed to use a single-point cane and urine catheter; and (3) he was not to stand or sit for periods greater than twenty minutes. Opp'n to Mot. for Summ. J. (dkt. #37) at 12-13.

On September 28, 2011, Plaintiff was transferred from LAC to PBSP. Adam Decl. at 2. PBSP Nurse Lopez examined Plaintiff upon his arrival. Id. On discharge the next day, PBSP Dr. Martinelli prescribed Plaintiff the same amount of methadone and ibuprofen that he had received at LAC. Id. at 2-3.

On October 3 and 10, 2011, PBSP Nurse Ray treated Plaintiff in response to his complaints of ineffective pain medication and continued chronic lower

1  back pain. Id. at 3; Ray Decl. (dkt. #29-4) at 2. Plaintiff's prescription for
2  methadone (35 mg) was renewed several days later. Ray Decl. at 2.
3    On November 1, 2011, PBSP Nurse Smith treated Plaintiff for his
4  complaint of constipation related to his bowels, which he noted was made worse
5  by his pain medications. Smith Decl. (dkt. #29-7) at 2; Adam Decl. at 3.
6    On November 2, 2011, Defendant assessed Plaintiff's neurogenic bladder
7  condition and need for additional urinary catheters, and wrote a new
8  comprehensive disability and accommodation form to allow Plaintiff to keep four
9  catheters at a time in his cell. Adam Decl. Ex. H.
10   On November 5, 2011, Plaintiff completed an Initial Pain Assessment
11 form where he wrote that taking methadone "don't [sic] help relieve any pain."
12 Adam Decl. at 4.
13   On November 10, 2011, PBSP Nurse Risenhoover treated Plaintiff for
14 chronic lower back pain and referred the matter to the Pain Management
15 Committee. Risenhoover Decl. (dkt. #29-5) at 2. Plaintiff complained that the
16 methadone was not working, and Nurse Risenhoover expressed concerned about
17 Plaintiff's continued use of methadone because it is an opiate with addictive
18 properties. Risenhoover Decl. at 2. The Pain Committee nonetheless agreed to
19 renew Plaintiff's methadone prescription for the time being. Opp'n to Mot. for
20 Summ. J., Ex. B.
21   On November 14, 2011, prison staff advised Defendant that Plaintiff
22 attacked an officer with his walking cane while ambulating with a steady gait.
23 Adam Decl. at 4. Two days later, prison staff advised Defendant that Plaintiff
24 had stood on top of his toilet without his walker and threatened to attack staff
25 members with his walker. Id.
26 /

3

1  On November 17, 2011, Defendant treated Plaintiff and started a
2  methadone taper. Id.; Opp'n to Mot. for Summ. J. at 2. Defendant advised
3  Plaintiff that tapering him off methadone should improve his nighttime
4  neurogenic bladder symptoms and eliminate opiate-caused dizziness. Adam
5  Decl. at 4.

6  On November 21, 2011, Defendant prescribed Plaintiff acetaminophen
7  (650 mg) for pain to be taken in conjunction with the methadone taper. Id. at 5.

8  On November 26, 2011, Plaintiff fell in his cell and was admitted into the
9  Correctional Treatment Center (in-house hospital) at PBSP. Id. Physician
10 Assistant Thomas treated Plaintiff and increased his methadone to 40 mg and
11 continued the acetaminophen at 650 mg. Id.

12 On November 28 and 29, 2011, Defendant treated Plaintiff at the
13 Correctional Treatment Center for leg weakness and, after an examination,
14 elected to continue Plaintiff's methadone taper. Id. Defendant prescribed
15 Plaintiff 30 mg methadone and 650 mg acetaminophen, and discharged him. Id.

16 On December 1, 2011, the PBSP Chronic Pain Management Committee
17 met to discuss Plaintiff's medications. Id. at 6. Defendant reported to the
18 Committee that Plaintiff complained about the methadone making him "lazy" and
19 that her objective findings of Plaintiff's pain were inconsistent. Id. Doctors
20 Ikegbu and Chief Medical Officer Sayre attended the Pain Committee meeting
21 and evaluated Plaintiff's medical condition, symptoms, medical findings,
22 treatment records and medications. Id.; Sayre Decl. (dkt. #29-6) at 3. They
23 agreed with Defendant's course of treatment of tapering Plaintiff off methadone
24 and prescribing 650 mg acetaminophen as an interim non-narcotic analgesic,
25 concluding that such treatment was "medically appropriate under the
26 circumstances." Adam Decl. at 6; Sayre Decl. at 3.

As of December 1, 2011, Defendant tapered Plaintiff off methadone as follows: December 14, 2011, 20 mg; December 9, 2011, 10 mg; and December 14, 2011, 5 mg. Adam Decl. at 6.

On December 15, 2011, Plaintiff filed a Form 602 Appeal to restore his methadone medication. Mot. for Summ. J. at 5. Plaintiff's appeal was rejected at the first-level of review on December 23, 2011 and, ultimately, at the third-level of review on March 20, 2012. Id.

On April 11, 2012, Plaintiff filed the instant action alleging that Defendant was deliberately indifferent to his serious medical needs by improperly discontinuing his long-term pain medication.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper when the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Id. But on an issue for which the nonmoving party will have the burden of proof at trial, as is the case

here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of fact exists only if there is sufficient evidence favoring the nonmoving party to allow a reasonable jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

**B.    Analysis**

A prison official violates the Eighth Amendment's proscription against cruel and unusual punishment when he acts with deliberate indifference to the serious medical needs of a prisoner. Farmer v. Brennan, 511 U.S. 825, 828 (1994). To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012). To meet the objective standard, the denial of a plaintiff's serious medical need must result in the "'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To meet the subjective standard of deliberate indifference, a prison official must know that a prisoner faces a substantial risk of serious harm and disregard that risk by failing to take reasonable steps to abate it. Farmer, 511 U.S. at 837.

/

Negligence cannot establish liability under the Eighth Amendment. Id. at 835-36 n.4. An "official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot under our cases be condemned as the infliction of punishment." Id. at 838. Instead, "the official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)). Prison officials violate their constitutional obligation only by "intentionally denying or delaying access to medical care." Estelle, 429 U.S. at 104-05.

A showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is generally insufficient to establish deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). To prevail on a claim involving choices between alternative courses of treatment, a prisoner-plaintiff must show that the course of treatment the doctor-defendants chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. Id.

Defendant claims she is entitled to summary judgment because, even when viewed in the light most favorable to Plaintiff, the evidence in the record does not show that she was deliberately indifferent to Plaintiff's nerve pain. The Court agrees. In view of the undisputed evidence in the record, no reasonable jury could find that Defendant disregarded Plaintiff's pain problems by failing to take reasonable steps to abate them. See Farmer, 511 U.S. at 837.

The record makes clear that each time Defendant examined Plaintiff, Defendant considered Plaintiff's concerns, identified the problems and took reasonable steps to abate them by treating them. See id. Defendant first examined Plaintiff on November 2, 2011 and issued Plaintiff additional urinary

catheters for his neurogenic bladder condition. After Defendant examined Plaintiff two weeks later, Defendant concluded that a methadone taper was proper because (1) Plaintiff had noted that methadone was not working, (2) methadone would increase Plaintiff's fall risk and (3) methadone was likely to worsen Plaintiff's constipation and possibly worsen his urinary retention. Adam Decl. at 4-5. Defendant prescribed Plaintiff 650 mg acetaminophen for pain as an interim non-narcotic analgesic. On November 28, 2011, Defendant again treated Plaintiff, this time at the Correctional Treatment Center for his claimed leg weakness. After an examination, Defendant concluded that Plaintiff should continue his methadone taper.

Plaintiff argues that Defendant was deliberately indifferent to his serious medical needs because the medication Defendant prescribed did not abate Plaintiff's pain. Opp'n to Mot. for Summ. J at 11. Plaintiff also claims that he requested to have the methadone increased to twice a day, not discontinued. Id. at 2. But Plaintiff's mere disagreement with Defendant's chosen course of treatment – to taper him off methadone – is not enough to establish deliberate indifference. See Franklin, 662 F.2d at 1344.

Plaintiff has set forth no evidence whatsoever showing that the course of treatment Defendant chose was medically unacceptable under the circumstances and that Defendant chose this course of treatment in conscious disregard of an excessive risk to Plaintiff's health. See Toguchi, 391 F.3d at 1058. In fact, Dr. Ikegbu and Chief Medical Officer Sayre of PBSP's Chronic Pain Management Committee both agreed with Defendant's course of treatment of tapering Plaintiff off methadone and prescribing acetaminophen as an interim non-narcotic analgesic. Sayre Decl. at 3. Both doctors stated that "tapering off [Plaintiff's] methadone was medically appropriate under the circumstances." Id.

/

Contrary to Plaintiff's suggestion, this case does not present a situation where a doctor repeatedly prescribed unworkable treatment with the knowledge that it had no hope of succeeding and, in fact, would only cause a patient further delay and pain. To the contrary, the record makes clear that each time Defendant examined Plaintiff, Defendant considered Plaintiff's concerns, identified the problems and took reasonable steps to abate them by treating them with acceptable courses of treatment. See Farmer, 511 U.S. at 837; Toguchi, 391 F.3d at 1058. Plaintiff's disagreements with Defendant's treatment decisions amount to no more than a claim for negligence or medical malpractice not cognizable under § 1983. See Farmer, 511 U.S. at 835-36 & n.4; Toguchi, 391 F.3d at 1060-61.

In sum, Plaintiff has not demonstrated the existence of a genuine dispute of material fact on his claim that Defendant was deliberately indifferent to his serious medical needs. Defendant consequently is entitled to summary judgment as a matter of law. See Celotex, 477 U.S. at 323.

And for essentially the same reasons, plaintiff's motion for preliminary injunctive relief (i.e., some sort of order compelling Defendant and the PBSP Chronic Pain Management Committee to reinstate his methadone) must be denied – plaintiff has not shown that he is likely to succeed on the merits or that he is likely to suffer irreparable harm in the absence of the relief he seeks. See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009). While Plaintiff has filed various medical records authored by his prison medical care providers and outside physicians, none of these records show that reinstating his methadone is medically necessary; rather, they tend to show that a methadone taper was "medically appropriate under the circumstances." Sayre Decl. at 3. And while Plaintiff claims that he is dealing with severe lower-back pain, nothing in the record shows that he is likely to suffer irreparable injury without methadone.

Plaintiff was prescribed 650 mg acetaminophen as a non-narcotic alternative pain medication, a pain treatment the PBSP Chronic Pain Management Committee found "medically appropriate." Id.[1]

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (docket #29) is GRANTED and Plaintiff's motion for a TRO/preliminary injunction (docket #35) is DENIED.

The clerk shall enter judgment in accordance with this order and close the file.

SO ORDERED.

DATED: July 18, 2013

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\CR.12\Lua, H.12-1793.msj.wpd

---

[1] This is not to say that Plaintiff is without recourse should he experience worsening severe lower-back pain as a result of Defendant's or some other prison doctor's deliberate indifference. Although the evidence in the record indicates that Defendant's decision to taper Plaintiff off methadone and put him on 650 mg acetaminophen was "medically acceptable," this does not preclude Plaintiff from filing suit in the future and presenting evidence that Defendant's or some other prison doctor's continued pain treatment plan is medically unacceptable and chosen in conscious disregard of an excessive risk to Plaintiff's health. See Toguchi, 391 F.3d at 1058.

10